UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ALFREDO VAZQUEZ ESPARRA,

                 Petitioner,           15 Civ. 4897 (RWS)
                                       12 Cr. 844 (RWS)

      -against-                        OPINION

UNITED STATES OF AMERICA,

                 Respondent.

----------------------------------------X

A P P E A R A N C E S:

        Pro Se

        ALFREDO VAZQUEZ ESPARRA

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/16

        Attorney for Respondent

        PREET BHARARA
        U.S. Attorney, S.D.N.Y.
        1 St. Andrew's Plaza
        New York, NY 10007
        By:  Emil J. Bove III, Esq.
              Russell Capone, Esq.

**Sweet, D.J.**

The petitioner Alfredo Vazquez Esparra ("Esparra" or the "Petitioner") has moved pursuant to Title 28, United States Code, Section 2255 to correct, vacate, or set aside his sentence of 140 months. Based on the conclusions set forth, the motion is denied, and the petition is denied.

**Prior Proceedings**

Superseding Indictment S9 12 Cr. 844 was filed on December 18, 2012 charging Esparra in one count with conspiring to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).

Esparra elected to go to trial, which commenced on April 21, 2014. Esparra was the only defendant in the multi-defendant case who chose to proceed to trial.

The Government presented evidence that on August 1, 2012, as a result of their investigation, law enforcement agents discovered a warehouse in Bayonne, New Jersey (the "Warehouse"),

1

that Esparra and other members in the drug trafficking

organization (the "DTO") used to store the cocaine once it

arrived in the continental United States before transporting it

to wholesale drug traffickers. That night, agents arrested three

individuals and seized cocaine both in the Warehouse and in two

vehicles. In all, the amount of cocaine seized on August 1, 2012

alone was approximately 350 kilograms. (Tr. 32-38, 54-55).

Subsequent investigation identified the remaining

members of the DTO, including the Petitioner, who were all

arrested. Eduardo Andino ("Andino"), one of the individuals

arrested on August 1, 2012, testified at length at trial as to

the inner workings of the DTO, and Esparra's role more

specifically. Andino testified that on seven to nine occasions

between November 2011 and August 2012, the DTO arranged for

cocaine to be transported from Puerto Rico to New Jersey. (Tr.

116, 130). The cocaine, typically more than 100 kilograms per

shipment, was loaded into hollowed-out stacks of bamboo

flooring, which were then put into cardboard boxes and stacked

onto pallets for delivery by commercial ship. (Tr. 98-100).

Andino helped to create the pallets in Puerto Rico and to

deconstruct them and deliver the cocaine after the pallets

arrived in New Jersey. (Tr. 98-100, 140-51).

2

Andino testified that Esparra worked with Pablo
Ventura ("Ventura"), who was responsible for arranging the
shipments of cocaine from Puerto Rico to New Jersey. Esparra
assisted with the logistics of having the cocaine-filled pallets
shipped from Puerto Rico to New Jersey, and at times physically
transported the pallets to the shipping company in Puerto Rico.
(Tr. 135-36, 149-50). Esparra, along with Ventura, then traveled
to New Jersey to oversee the retrieval of the cocaine. (Tr. 140-
51). On all but the first two shipments, Esparra drove to the
shipping company's facility in New Jersey to retrieve the
pallets, and transported the pallets back to the Warehouse. (Tr.
148).

During each of the trips to New Jersey, after Esparra
brought the cocaine to the Warehouse, he, Ventura, Andino, and
co-conspirator Omar Aponte ("Aponte") participated in unloading
the cocaine from the bamboo flooring and reconstructing the
flooring and pallets. (Tr. 142-44, 148-49). Andino and Aponte
then delivered the cocaine to wholesale customers, using vans
rented by Esparra and Ventura. (Tr. 145). All four men lived in
an apartment above the Warehouse during the times that they were
in New Jersey. (Tr. 141-43).

3

On August 1, 2012, Esparra, Ventura, Andino, and
Aponte unloaded 350 kilograms of cocaine at the Warehouse. When
they were finished, Andino and Aponte went to deliver the
cocaine, and Esparra returned to the apartment above the
Warehouse. (Tr. 93-101, 120-21). Law enforcement officers then
arrested Andino and Aponte while they were making deliveries,
and located the Warehouse. (Tr. 123). Esparra later told Andino
that as agents searched the Warehouse and seized the cocaine, he
and Ventura turned off the lights and remained quiet in the
upstairs apartment. After the agents left, Esparra and Ventura
drove to the airport and bought tickets back to Puerto Rico.
(Tr. 152-53).


On the second day of trial, Esparra pled guilty to the
sole count of the Superseding Indictment without the benefit of
a plea agreement. In advance of the plea, the Government
provided counsel for Esparra with a letter dated April 19, 2014,
pursuant to *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d
Cir. 1991) ("the Pimentel Letter"), setting forth the
Government's view of the advisory Guideline calculation that
Esparra faced upon a plea. Using the November 2013 United States
Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the
Government stated that the base offense level was 38 because the
offense involved more than 150 kilograms of cocaine, and that a

4

two level decrease was warranted for acceptance of responsibility, resulting in an adjusted offense level of 36. (PSR ¶ 3). Esparra was in Criminal History Category I, resulting in a Guidelines range of 188 to 235 months' imprisonment. (PSR ¶¶ 3-4). The charge against Esparra contained in the Superseding Indictment to which he pled carried a mandatory minimum of 10 years' imprisonment, and a statutory maximum sentence of life imprisonment.

After receiving the Pimentel Letter, on April 22, 2014, Esparra pled guilty. The Court conducted a guilty plea allocution with respect to the Petitioner. Esparra stated that he understood his rights and that he did not have any questions for the Court or for his attorney. (Tr. 187).

In response to the Court's questions, Esparra stated that he had reviewed the Indictment with Lopez Romo ("Romo"), his attorney, that he understood the Indictment, and that he had told Romo "everything [he] kn[e]w about those accusations [in the Indictment]." (Tr. 190-91). Esparra further stated that he was not pleading guilty because of any "promise" that he "would be treated leniently or any other kind of promise," or "any force or threat." (Tr. 191-92).

5

In response to the Court's further questions, Esparra
stated that: (i) he had completed 9th grade; (ii) he was
employed as a truck driver; (iii) he had not used any substances
in the past two days that would affect his ability to understand
the proceedings; and (iv) he was not under a doctor's care. (Tr.
192-93). Esparra confirmed that he had selected Romo as his
attorney and that he was "satisfied" with Romo's representation.
(Tr. 193).

Esparra explained that he understood the charge
against him to be "conspiracy" to "bring drugs to New York," and
that the "purpose of bringing the drugs to New York" was to
"distribute [the drugs] in New York." (Tr. 193-94). Esparra
confirmed that he knew that his actions were "violating the
law." (Tr. 194). When asked to describe his specific actions,
Esparra stated that he "picked up the merchandise at the
warehouse and … distribute[d] it to different warehouses in New
Jersey." (Tr. 194). Esparra explained that the "merchandise" at
issue was "cocaine" and that he took these actions
"intentionally." (Tr. 194-95).

The Government thereafter proffered facts establishing
that venue was appropriate in the Southern District of New York.
(Tr. 197). The Court then asked Esparra if the Pimentel letter

6

had been read to him, and Esparra confirmed that it had and that
he "underst[oo]d it." (Tr. 197). The Court also found, based on
the record, that the conspiracy at issue involved "over five
kilograms of cocaine." (Tr. 197).

The Court concluded by finding that there was a
"factual basis for the plea," and "adjudicate[d]" Esparra guilty
of Count One of the Indictment. (Tr. 197).

At the time of Esparra's sentencing on October 28,
2014, Amendment 782 to the Sentencing Guidelines had been
proposed and was about to come into effect as part of the
November 2014 Sentencing Guidelines. Amendment 782 lowered the
offense level for most drug offenses set forth in the Drug
Quantity Table at Section 2D1.1 of the Sentencing Guidelines by
two levels. The Government therefore took the position at
Sentencing that the Court should sentence Esparra as if the
applicable sentencing range were two levels lower, in accordance
with the forthcoming amendment, and that the applicable range
was therefore not 188 to 235 months, but 151 to 188 months.
(Oct. 28, 2014 Sentencing Transcript ("Sentencing Tr.")). The
Court agreed with this calculation. (Sentencing Tr. 10).

7

At the sentencing proceeding, Romo stated that he had reviewed the PSR with Esparra. (Sentencing Tr. 2). Other than raise the issue regarding Amendment 782, Romo did not make any objections to the PSR. (Sentencing Tr. 2-3). The Court then heard from Romo, the Petitioner, and the Government. (Sentencing Tr. 4-10). The Petitioner did not complain about his attorney's representation of him or contest any of the facts set forth in the PSR, or suggest in any fashion that he had been misled by counsel in entering his plea. (Sentencing Tr. 5).

The Court denied Esparra's requests, made through his written submissions, for: (1) a three-point reduction for acceptance of responsibility (rather than a two-point reduction) because Esparra's acceptance of responsibility was "certainly not timely" and (2) for "safety valve" relief because Esparra's "guilty plea [did] not constitute a substitute for a proffer and there has been no proffer." (Sentencing Tr. 13). The Court noted Esparra's "relatively minimal role" as a justification for a below-Guidelines sentence of 140 months. (Sentencing Tr. 13-14). The Court explained: "I'm going to give you some credit for your position taken that you were simply a truck driver. You were more than a truck driver. You knew what was happening, but you were not one of the leaders …." (Sentencing Tr. 14). The Court concluded by informing Esparra of his right to appeal.

8

(Sentencing Tr. 14). Judgment was entered the same day, on
October 30, 2014. Esparra did not appeal either his conviction
or sentence.

Esparra filed the instant Petition on June 10, 2015.
In the Petition, Esparra asserts that (1) Romo was ineffective
because he did not challenge the drug quantity that applied to
him at sentencing despite Esparra's request that he do so, (Pet.
5); (2) his sentence should be reduced by two levels in
accordance with Amendment 782, (id.); and (3) he should be
resentenced in light of the pending Smarter Sentencing Act bill.
(Id.)

The instant Petition was marked fully submitted on
June 8, 2016.

**The Applicable Standard**

A claim that defense counsel was constitutionally
ineffective is evaluated under the two-part standard set forth
in *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94
(1984); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To prevail, a
petitioner must (i) show that his counsel's representation fell
below "an objective standard of reasonableness" under

9

"prevailing professional norms," and (ii) "affirmatively prove
prejudice." *Strickland*, 466 U.S. at 687-88, 693-94; accord *Chang
v. United States*, 250 F.3d 79, 84 (2d Cir. 2001); *Cullen v.
United States*, 194 F.3d 401, 403 (2d Cir. 1999). Only if both of
these elements are satisfied can the petitioner demonstrate that
his "counsel made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant by the
Sixth Amendment." *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a
reviewing court "'must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance,' bearing in mind that '[t]here are
countless ways to provide effective assistance in any given
case' and that '[e]ven the best criminal defense attorneys would
not defend a particular client in the same way.'" United States
v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting
Strickland, 466 U.S. at 689).

A defendant is entitled to the effective assistance of
counsel in connection with plea negotiations because one of the
basic duties of a defense attorney is to provide clients with
the benefit of his or her advice on whether to plead guilty. See
*Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Purdy v. United*

10

*States*, 208 F.3d 41, 44 45 (2d Cir. 2000). As part of this advice, counsel must communicate to the defendant the terms of the plea offer, and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. *Purdy*, 208 F.3d at 45; accord *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) (defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused). An attorney's failure to communicate a plea offer to his client, or to advise his client adequately about the decision to plead guilty, may amount to constitutionally deficient performance. See, e.g., *Cullen*, 194 F.3d at 404; *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998); *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996). To establish a Sixth Amendment violation, the petitioner must establish that his attorney in fact failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty. *Gordon*, 156 F.3d at 380; *Keane*, 99 F.3d at 496-98.

Where a petitioner claims that his attorney "failed to adequately discuss the terms of his plea agreement or to advise him of his rights prior to entering the plea," the court should examine the record to determine whether the petitioner's

11

allegations are contradicted by the underlying proceedings.
*Muniz v. United States*, 360 F. Supp. 2d 574, 578 (S.D.N.Y.
2005). For example, a petitioner's sworn statements in court
that he understood the plea agreement carry a strong presumption
of truthfulness that should carry over a later, bald assertion
to the contrary. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977);
cf. *United States v. Hernandez*, 242 F. 3d 110, 112-13 (2d Cir.
2001) (denying motion to withdraw guilty plea where defendant
alleged his counsel was ineffective by failing to advise
defendant of consequences of plea and barely reviewing plea
agreement, because of sworn statements to the contrary at plea
proceeding); *United States v. Maher*, 108 F.3d 1513, 1530 (2d
Cir. 1997); *Patel v. United States*, 252 F. App'x 970, 975 (11th
Cir. 2007).

When considering the two prongs of *Strickland*, the
Supreme Court has explained that "if it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice, which we expect will often be so, that course should
be followed." *Strickland*, 466 U.S. at 697. Under the second
prong of the *Strickland* test, a defendant must meet the "heavy
burden" of showing "actual prejudice." *Strickland*, 466 U.S. at
692. To satisfy the prejudice prong, the defendant must
demonstrate that there is a "reasonable probability that, but

12

for counsel's unprofessional errors, the result of the
proceeding would have been different." *Strickland*, 466 U.S. at
693-94; see, e.g., *United States v. Levy*, 377 F.3d 259, 264 (2d
Cir. 2004). "It is not enough 'to show that the errors had some
conceivable effect on the outcome of the proceeding.'"
*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting
*Strickland*, 466 U.S. at 693). "[N]ot every error that
conceivably could have influenced the outcome undermines the
reliability of the result of the proceeding." *Strickland*, 466
U.S. at 693.

       To prove the second Strickland prong, prejudice from
inadequate representation, where the movant asserts that his
attorney's deficient performance induced him to enter the plea
agreement and plead guilty, the movant must show that "there is
a reasonable probability that, but for counsel's errors, he
would not have pleaded guilty and would have insisted on going
to trial." *Hill*, 474 U.S. at 59. Where the "petitioner [does]
not allege in his habeas petition that, had counsel correctly
informed him about [the plea agreement], he would have pleaded
not guilty and insisted on going to trial," the second
*Strickland* prong is not met. *Id.* at 60; see also *Lafler*, 132 S.
Ct. at 1384-85 ("In the context of pleas a defendant must show

13

the outcome of the plea process would have been different with competent advice.").

The filing of a Section 2255 petition does not, by itself, obligate the district court to conduct an evidentiary proceeding. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (filing of motion "does not entitle petitioner automatically to a hearing"). Rather, a district court may summarily dismiss a Section 2255 petition where the defendant submits no supporting affidavit or fails to raise "detailed and controverted issues of fact." *Newfield*, 565 F.2d at 207. Similarly, where the existing record "conclusively show[s] that the petitioner is entitled to no relief," summary dismissal may be appropriate. *Id.*; see also 28 U.S.C. § 2255; *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996) (no need for further factual development because defendant failed to raise plausible ineffectiveness claim regarding attorney's performance in plea negotiations or at trial); *Hopkins v. Schillinger*, 866 F.2d 1185, 1211 (10th Cir. 1989) ("Conclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing, as are contentions that in the face of the record are wholly incredible.").

14

**The Petition is Construed to Allege Ineffective Assistance of Counsel at Sentencing**

Although Esparra contends that he asked his attorney to "appeal the drug quantity in question," (Pet. 5), the remainder of his claim establishes that Esparra believed that Romo provided ineffective assistance of counsel at sentencing, and not on appeal. Esparra states that but for the purportedly effective assistance provided by Romo, he would have chosen to go to trial, not to plead guilty, and possibly obtain "a different outcome in sentencing." (Pet. 5). Moreover, the relief that Esparra requests is a resentencing proceeding and a *Fatico* hearing, not a renewed opportunity to file an appeal. (Pet. 5). As such, Esparra is challenging Romo's performance at the sentencing proceeding and not a failure to appeal.

**The Petition is Denied**

Esparra's current contention that he asked Romo to challenge the drug quantity at sentencing is belied by the record. Esparra was present during the sentencing hearing while the Court, Romo, and the Government explicitly discussed the quantity of cocaine at issue and the appropriate Guidelines calculation. (Sentencing Tr. 2-11). Esparra did not challenge

15

the drug quantity. When given an opportunity to speak on his own behalf, Esparra said only, "I would like to say that I am very remorseful for what I have done. I apologize to your Honor, to the government, and to the United States Government for what I have done and that I will not do it again. That will be all." (Sentencing Tr. 5). Esparra did not avail himself of this opportunity to raise his current challenge to the drug quantity or the Guidelines calculation.

In light of the record established at trial, there is no plausible argument that defense counsel's choice not to challenge the 150-kilogram quantity can be fairly categorized as having fallen below "prevailing professional norms." *Strickland*, 466 U.S. at 688-89. The testimony of both Drug Enforcement Administration Special Agent Joseph Dill and Esparra's co-conspirator Andino established the seizure of more than 250 kilograms of cocaine from the Warehouse and from cars driven by Wilfredo Aquino and Omar Aponte on August 1, 2012. (Tr. 26-56). Andino connected the seized cocaine to Esparra, explaining Esparra's role in distributing the cocaine (Tr. 93-101, 111-16), and that he and Esparra, among others, had previously distributed similar quantities of cocaine multiple times. (Tr. 116-17). Accordingly, the record was more than sufficient to establish the finding that the quantity of cocaine involved in

16

the offense was greater than 150 kilograms. Romo did not render deficient performance by failing to challenge the drug quantity.

Moreover, even if Esparra's allegations provided cause to believe that Esparra's counsel acted in a professionally unreasonable manner, Esparra cannot establish prejudice. See *Strickland*, 466 U.S. at 687-89, 693-94. While Esparra now claims that he would have continued in his decision to proceed to trial had he known that his attorney would not challenge the drug quantity at sentencing, that claim is contradicted by the record. Esparra did in fact opt to proceed to trial. It was only on the second day of trial, after hearing the testimony of two Government witnesses, that Esparra reversed his decision and chose to plead guilty. At the time that Esparra pled guilty, he was in possession of the Pimentel Letter, setting forth the Government's estimate of the Guidelines calculation and applicable Guidelines range, which explicitly referenced a drug quantity of more than 150 kilograms of cocaine. (See Pimentel Letter). The Court asked Esparra if the Pimentel letter had been read to him, and Esparra confirmed that it had and that he "underst[oo]d it." (Tr. 197). Even understanding the Pimentel Letter, which contained a Guidelines calculation higher than the one ultimately used at sentencing, Esparra opted to plead guilty. Esparra's assertion that he would not have pled guilty

17

had he understood that the drug quantity would remain unchallenged cannot be credited, and he has failed to demonstrate prejudice as required by *Strickland*.

In Amendment 782 to the Guidelines, which became effective November 1, 2014, the Commission lowered the penalties for most drug offenses by reducing most offense levels on Section 2D1.1's Drug Quantity Table by two levels. This amendment effected not only defendants sentenced under Section 2D1.1, but also any defendant sentenced under a guideline that used the Drug Quantity Table in a cross-reference. See, e.g., U.S.S.G. § 2D1.5 (CCE); U.S.S.G. § 2S1.1(a) (money laundering). In Amendment 788, the Commission decreed that Amendment 782 may be applied retroactively to lower the sentences of previously sentenced inmates. Thus, many defendants, potentially the Petitioner, have become eligible for a sentence reduction pursuant to the recent amendments.

Although Esparra does not invoke Title 18, United States Code, Section 3582(c) in his motion, the relief he requests is governed by that statute, which provides, inter alia, that the Court may modify a term of imprisonment after it has been imposed where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has

18

subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." The process for considering a Section 3582(c) motion is well established. As the Supreme Court has made clear, Section 3582(c) "does not authorize a . . . resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Rather, it provides only for the possibility of "a limited adjustment to an otherwise final sentence" following a "two-step approach." *Id.* at 826-27.

"At step one, § 3582(c)(2) requires the court to follow the Commission's instructions . . . to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. As to whether the defendant is eligible for any reduction, "§ 1B1.10(b)(1) requires the court to begin by 'determining the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting U.S.S.G. § 1B1.10(b)(1) (alteration omitted)). If, for any of a number of reasons, the amendment, here, the amendment to Section 2D1.1's Drug Quantity Table, would not have altered the defendant's sentencing range even if it had been applicable at the time of the defendant's sentencing (for example, where the defendant was sentenced as a career offender, or where the bottom of the range was

19

`.   ,'   `

established by a statutory mandatory minimum sentence), then the
defendant is not eligible for a sentencing reduction. See
U.S.S.G. § 1B1.10(a)(2)(B) ("A reduction in the defendant's term
of imprisonment is not consistent with this policy statement and
therefore is not authorized under 18 U.S.C. § 3582(c)(2) if
. . . an amendment . . . does not have the effect of lowering
the defendant's applicable guideline range.").

    As to the extent of any possible sentencing reduction,
"Courts generally may not reduce the defendant's term of
imprisonment . . . to a term that is less than the minimum of
the amended guideline range" produced by the amendment. *Dillon*,
560 U.S. at 827 (internal quotation marks omitted). The
Commission has now made clear that even where a defendant
originally received a below-Guidelines sentence, he nonetheless
may not have his sentence reduced to one that is below the new,
amended range; the sole exception being a defendant who
previously received a departure based on substantial assistance.
See U.S.S.G. § 1B1.10(b)(2)(A) ("Except as provided in
subdivision (B) [relating to substantial assistance], the court
shall not reduce the defendant's term of imprisonment under 18
U.S.C. § 3582(c)(2) and this policy statement to a term that is
less than the minimum of the amended guideline range[.]"; *United
States v. Erskine*, 717 F.3d 131, 137-41 (2d Cir. 2013)

(recognizing that current version of Section 1B1.10 prohibits
reductions below the bottom of the amended range, irrespective
of departures or variances granted at the original sentencing).

"At step two of the inquiry," if the defendant has
been determined to be eligible, and the extent of his
eligibility has been established, the Court must decide in light
of the applicable Section 3553(a) factors whether to grant a
reduction "in whole or in part under the particular
circumstances of the case." *Dillon*, 560 U.S. at 827. This
decision is committed to the Court's discretion. See *United
States v. Mock*, 612 F.3d 133, 137 (2d Cir. 2010) ("If, and only
if, a defendant is eligible for a reduction in sentence under 18
U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, then the second step
of the analytical framework set forth in Dillon requires the
district court to consider any applicable § 3553(a) factors and
determine whether, in its discretion, the reduction authorized
by reference to the policies relevant at step one is warranted
in whole or in part under the particular circumstances of the
case." (internal quotation marks omitted)).

As noted above, and as set forth in the PSR, Esparra's
offense level at the time of his plea was 38 because he
conspired to distribute more than 150 kilograms of cocaine. This

21

was based on the November 2013 Guidelines in effect at the time of the plea in April 2014. Amendment 782 to the Guidelines became effective on November 1, 2014, just days after Esparra was sentenced in October 2014. Pursuant to Amendment 782, a quantity of cocaine equal to or in excess of 150 kilograms, but less than 450 kilograms, yields an offense level of 36. During the sentencing proceeding, both parties specifically requested that the Court afford Esparra the benefit of a two-level departure, i.e., an offense level of 36. (Sentencing Tr. 6-7.) The Court agreed and did so. (Sentencing Tr. 10). The Court then sentenced Esparra to 140 months, below the Guidelines range of 151 to 188 months.

As such, Esparra has already received the benefits of the amendment he now invokes. In any event, Esparra may not be resentenced to a term of imprisonment that is below the amended guideline range produced by the relevant amendment. *Dillon*, 560 U.S. at 827 (internal quotation marks omitted). Since Esparra has already been sentenced below the amended Guideline range, he may not be resentenced.

Finally, Esparra's request for relief under the Smarter Sentencing Act, specifically, that the Court resentence him without regard the mandatory minimum sentence, must be

22

rejected because the Smarter Sentencing Act is merely proposed legislation. Pursuant to Title 18, United States Code, Section 841(b)(1)(A), which remains the controlling law on this issue, the Court was and remains mandated by law to impose a sentence that is no lower than 120 months' imprisonment where the narcotics offense at issue involved five kilograms and more of mixtures and substances containing a detectable amount of cocaine.

**Conclusion**

Based upon the conclusions set forth above, the motion of the Petitioner is denied and the petition is dismissed. A certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(2) is denied and would not be taken in good faith, pursuant to 28 U.S.C. § 1915. See *Lozada v. United States*, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by *United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997).

It is so ordered.

**New York, NY**
**September** *16* **, 2016**

ROBERT W. SWEET
U.S.D.J.

24